UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THEMIS BAR REVIEW, LLC, | ) | Case No. 14CV208- L (BLM) |
| Plaintiff, | ) ) | **ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| v. | ) ) | |
| KAPLAN, INC., | ) ) | **[ECF No. 58]** |
| Defendant. | ) ) | |

Currently before the Court is Defendant's May 4, 2015 motion to compel production of documents [ECF No. 58-1 ("MTC")], Plaintiff's May 11, 2015 opposition to the motion [ECF No.62 ("Oppo.")], and Defendant's May 15, 2015 reply [ECF No. 63 ("Reply")]. For the reasons set forth below, Defendant's motion to compel is **GRANTED IN PART**.

## PROCEDURAL BACKGROUND

The above-entitled matter was initiated on January 30, 2014 when Plaintiff filed a complaint for declaratory relief. ECF No. 1. On April 30, 2014, Defendant answered Plaintiff's complaint and the Court held a telephonic Case Management Conference ("CMC") on June 23, 2014. ECF Nos. 16 and 24. That same day, the Court issued a CMC Order Regulating Discovery and Other Pretrial Proceedings. ECF No. 25.

On August 20, 2014, the Court convened a Mandatory Settlement Conference ("MSC"). ECF No. 30. The case settled and the Court issued an order confirming settlement and setting

an October 14, 2014 deadline for the parties to file a joint motion for dismissal. ECF No. 31. On September 22, 2014, the Court held a telephonic CMC and discovered that the parties were still in the process of negotiating the details of the settlement agreement. ECF Nos. 32 and 33. On October 17, 2014, counsel for both parties, Mr. Kenneth Fitzgerald and Mr. Neal Klausner, contacted this Court's chambers via telephone to inform the Court that the case had settled. ECF No. 34. The Court issued an order resetting the deadline for the parties to file their joint motion for dismissal to November 6, 2014. Id. at 2. The parties failed to file a join motion for dismissal and instead, appeared for a Settlement Disposition Conference ("SDC") on November 13, 2014. ECF No. 35. During the SDC, the parties indicated that the settlement had fallen apart and that they needed to pursue litigation. Accordingly, the Court issued an amended scheduling order. ECF No. 36. On December 29, 2014, the Court entered the parties' protective order. ECF No. 40.

On April 22, 2015, defense counsel, Mr. David S. Greenberg, contacted the Court regarding a discovery dispute between the parties. ECF No. 52. In regard to the dispute, the Court issued a briefing schedule and, in accordance with the Court's briefing schedule, the parties timely filed their respective motions and responses. MTC, Oppo., and Reply.

## DISCOVERY BACKGROUND

On August 8, 2014, Defendant served its first Request for Production of Documents ("RFP") on Plaintiff seeking documents related to Plaintiff's pass rate advertising and data substantiating the pass rates identified in Plaintiff's advertising. MTC at 6-7, ECF No. 58-2, Declaration of David Greenberg ("Greenberg Decl.") at 7, ECF No. 62-1, Declaration of Kenneth M. Fitzgerald ("Fitzgerald Decl.") at 2. Although responses were due on or around September 10, 2014, Plaintiff did not respond or object until November 26, 2014. Greenberg Decl. at 7 and Exh. 3. Plaintiff's first production occurred on December 23, 2014[1] and included 23 pages of financial information. Id.

On January 9, 2015, Plaintiff produced a CD-Rom containing spreadsheets reflecting

---

[1] The declaration states that the first production was on December 23, 2015. Greenberg Decl. at 7. The Court assumes that this is a typographical error and Mr. Greenberg meant December 23, 2014.

Plaintiff's pass rate statistics by jurisdiction[2] and the records of Plaintiff's students' bar exam results[3] with the percentage of Plaintiff's course work that each student had completed. Id. at 8.; see also MTC at 7. The spreadsheets were produced as PDF copies of the electronic files that were Microsoft Excel spreadsheets and which had been stripped of their filtering, sorting, and searching capabilities. Id.

On March 2, 2015, Mr. Greenberg emailed Mr. Cochran regarding search terms and requested

> the resulting collection of documents as image files with related fully searchable message text, also including the usual metadata (to, from, cc, date sent, subject, beginning bates no., ending bates no., parent/attachment ID nos., etc.), in a format that can be uploaded into a Summation database.

Greenberg Decl., Exh. 9 at 12. Mr. Cochran responded to the email, but did not address the request for metadata. Id. at 11. On March 23, 2015, Mr. Greenberg emailed Mr. Cochran and wrote

> we previously requested native copies of the Microsoft Excel files Themis produced in PDF format, containing pass rate information and student enrollment pass/fail data, Themis 000157-Themis 001161. (See the attached email.) Please supplement your production with these files as well

Id. at 8. Mr. Cochran responded to the request by asking for "authority that obligates us to produce the native files." Id. at 7. On March 30, 2015, Mr. Greenberg asked Mr. Cochran to confirm that the materials being prepared from various individuals "will include the extracted text." Id. at 6. On April 17, 2015, Mr. Greenberg sent another email to Mr. Cochran seeking confirmation "that the extracted text is included" and offering to meet and confer at a specific time. Id. at 5. Mr. Cochran responded that same day, but did not mention the extracted text or the offer to meet and confer. Id. at 4.

On April 22, 2015, Plaintiff produced a hard drive containing 822,493 pages of email

---

[2] These documents were identified as THEMIS 000157 through THEMIS 000257. Greenberg Decl. at 8; see also MTC at 7.

[3] These documents were identified as THEMIS 000258 through THEMIS 0001161. Greenberg Decl. at 8; see also MTC at 7.

communications.[4]  Greenberg Decl. at 14; see also MTC at 8.  The production contained no metadata - for example the "to" "from" "date" and "subject" lines of the emails - and were not text searchable.  Greenberg Decl. at 14-15; see also MTC at 8.  In addition, all Microsoft spreadsheets that were attached to the emails were "process[ed] and image[d]" and, therefore, made unsearchable. Greenberg Decl. at 15.  When Mr. Greenberg responded to an email from Mr. Cochran about the hard drive on April 22, 2015, he again followed up on the extracted text issue stating

> [u]nfortunately, you have not answered my questions about the extracted text from the emails you are producing and about the native excel files. I left you a voicemail on Friday but you have not returned my call.  Further to the voicemail I left you earlier today, we will be contacting Magistrate Major's chambers to arrange a conference call with the judge

Id. at 3. Mr. Cochran responded by stating that the Joint Discovery Plan only required the production of PDF documents and that the parties had "never discussed producing the hard drive with extracted text, nor the . . . format of the hard drive production." Id., Exh. 9 at 3.

On May 7, 2015, Mr. Cochran produced the Mircosoft Excel spreadsheets in native format and explained "[p]reviously, you demanded that we provide the native files to you without explanation.  For the first time, you explained in your motion to compel why Kaplan needed the files in native format." ECF No. 63-1, Reply Declaration of David S. Greenberg ("Greenberg Reply Decl."), Exh. 12 at 4.

On May 12, 2015, Mr. Greenberg, offered "to pay 50% of your vendor's final invoice -- up to a total of $8,200 -- to produce the e-mails and attachments in the format we have specified in our motion" despite its position that "Themis should rightfully bear any costs involved in producing the emails with metadata and searchable extracted text." Id. at 2.  That same day Mr. Cochran responded that Plaintiff would only produced the emails in native format if Defendant wanted to pay the entire cost.  Id.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 34 reads:

---

[4]These documents were identified as TBR 00000001 through TBR 00822493. Greenberg Decl. at 14-15; see also MTC at 8.

*Producing the Documents or Electronically Stored Information*. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information: (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and (iii) A party need not produce the same electronically stored information in more than one form.

FRCP 34(b)(2)(E)(i-iii).

## DISCUSSION

Defendant seeks an order from the Court requiring

(1) [] Themis to reproduce, in native format, the Microsoft Excel spreadsheets previously produced as static PDF images at control numbers THEMIS 000257 through THEMIS 001161; [and] (2) [] Themis to reproduce the email documents previously produced as images bearing control numbers TBR00000001 through TBR00822493, this time as images with associated metadata indicating at least the following information for each document: custodian, [] beginning and ending control number, [] sender, [] recipients, [] carbon copy recipients, [] subject/"re:" line, [] date and time sent/received, [] control numbers for any "parent" message or message attachments, and [] searchable, extracted message text, with such images and metadata to be accompanied by (a) native Microsoft Excel versions of any Excel files attached to these email communications, with placeholder images or "sheets" within the image collection, identifying those attachments and their control numbers, and (b) a load file compatible with the "Summation" litigation review software

MTC at 15-16. In support, Defendant argues that (1) the spreadsheets at issue are typically maintained as Excel files not PDFs and Plaintiff's production violates FRCP 34 which requires parties to produce electronically stored information ("ESI") in the manner in which it is ordinarily maintained, (2) the spreadsheet PDFs are difficult to review and interpret because "in many instances single rows of data appear broken across two non-consecutive pages," (3) many of the PDFs contain print that is so small it is "virtually illegible," (4) Plaintiff is not excused from producing native copies because Defendant refused a similar request, (5) producing the spreadsheets in native form would impose "little to no burden or cost on" Plaintiff, (6) the current state of the documents imposes a large burden on Defendant, (7) the emails as produced constitute an impermissible "document dump," and (8) the cost to reproduce the emails would likely be minimal to Plaintiff. Id. at 8-16.

Plaintiff opposes Defendant's request and contends that (1) Defendant's request for native Microsoft files is moot because Plaintiff provided Defendant with the native files, (2) the parties agreed in the Joint Discovery Plan lodged with the Court that ESI would be produced in PDF format, (3) Defendant has produced all of its documents in PDF format, (4) its production does not violate FRCP 34 as Defendant omitted a key portion of the rule in its motion, (5) Defendant's cited cases do not support its position, (6) Defendant failed to specify the form of the production in its discovery requests, (7) Defendant does not need the documents it is requesting because its motion for summary judgment is due on May 22, 2015 and there are no issues of disputed fact, and (8) it would cost Plaintiff $16,400 to reproduce the disputed documents, but that it would do so if Defendant was willing to pay for it. Oppo. at 10-15; see also ECF No. 62-2, Declaration of Keith M. Cochran ("Cochran Decl.") at 2-3.

Defendant replies that the Joint Discovery Plan sets forth a procedure for requesting the production of metadata that requires both sides to meet and confer regarding the request. Reply at 5. Defendant states that it requested emails with basic metadata prior to the date Plaintiff began processing emails for production, but that Plaintiff ignored the request, refused to meet and proceeded to have its emails converted to non-searchable PDF documents. Id. at 5-6. Defendant notes that at the time it asked for the emails to be produced with metadata, Plaintiff would not have been required to duplicate production efforts or incur additional costs to provide the metadata. Id. at 6. Defendant argues that the cases Plaintiff cites to in support of its opposition are distinguishable from the instant dispute because those cases involved metadata requests that came after the producing party had produced documents without metadata. Id. at 7. Defendant further argues that the pending cross-motions for summary judgment have no bearing on the instant dispute because if the motions are not granted, the discovery will be necessary and if Defendant's motion is granted, the emails will be relevant to Defendant's recovery of attorney's fees and costs. Id. at 9. Defendant also states that it offered to pay half of the costs necessary to resolve the instant motion, but Plaintiff refused. Id. at 3; Greenberg Reply Decl. at 2. Finally, Defendant notes that shortly after the instant motion was filed, Plaintiff

"immediately produced [its pass rate] data in native format, mooting one part of [Defendant's] motion." Id. at 2. Accordingly, the first part of Defendant's request from the Court is now moot and Defendant only seeks an order requiring Plaintiff to provide the relevant emails with metadata.[5] Id. at 9-10.

**Analysis**

In accordance with the Court's May 27, 2014 Order Finding Early Neutral Evaluation Inappropriate, Directing Rule 26 Compliance, and Setting Case Management Conference [ECF No. 20], the parties lodged a Joint Discovery Plan with chambers. The portion of the Joint Discovery Plan that is currently at issue states:

> **C.   Issues About Disclosure Or Discovery Of Electronically Stored Information, Including The Form Or Forms In Which It Should Be Produced – Rule 26(f)(3)(C)**
>
> The parties agree: (i) that they can limit searches for and production of electronically stored information ("ESI") to custodians reasonably likely to have relevant information; and (ii) to avoid unduly burdensome searches, such as of backup tapes or dynamic databases (including automatically deleted or overwritten data), absent a showing of good cause. Responsive documents may be produced in PDF format, unless otherwise agreed between the parties.
>
> If a party believes, on a case-by-case basis, that documents should be produced in a format other than native format, or that metadata should be produced, the parties collectively agree that they will meet and confer in good faith to discuss such alternative production arrangements.
>
> The parties have further agreed that they will meet and confer in good faith to ensure that the format of each party's production is compatible with the technical requirements of the receiving party's document management systems.

ECF No. 62-4, Exhibit 1 to Oppo. (emphasis in original). After agreeing that responsive documents could be produced in PDF format, the parties recognized that certain documents may need to be produced with metadata or in a non-PDF format and established a procedure for requesting such a production. Id. In accordance with that provision, Defendant advised Plaintiff

---

[5] Emails TBR00000001 through TBR00822493, with associated metadata indicating custodian, beginning and ending control number, sender, recipients, carbon copy recipients, subject/"re:" line, date and time sent/received, control numbers for any parent message or message attachments, and searchable, extracted message text, with such images and metadata to be accompanied by (a) native Microsoft Excel versions of any Excel files attached to these email communications, with placeholder images or sheets within the image collection, identifying those attachments and their control numbers, and (b) a load file compatible with the "Summation" litigation review software. Reply at 9-10.

that it needed the spreadsheets and emails produced in the native format and attempted to meet and confer with Plaintiff to discuss having Plaintiff's emails and Microsoft Excel spreadsheets produced with metadata. Greenberg Decl., Exh. 9 at 3, 5-12. Instead of actively meeting and conferring as contemplated by the Joint Discovery Plan, it appears that Plaintiff initially ignored the issue and Defendant's offer to meet and confer and later ended the meet and confer attempts by stating that according to the Joint Discovery Plan, it was not required to produce the requested documents in any format other than PDF. Id. After reviewing Defendant's motion to compel, Plaintiff then changed its position on the Microsoft Excel spreadsheets and produced them in native format, but did not change its position on the emails at issue. Greenberg Reply Decl., Exh. 12 at 2, 4. The parties' stipulation trumps FRCP 34 and the parties were therefore required to meet and confer in good faith regarding Defendant's request. Melian Labs Inc. v. Triology LLC, 2014 WL 4386439, *2 (N.D. Cal., Sept. 4, 2014) (finding the parties' Joint Rule 26(f) Report to be a stipulation as to ESI production and that accordingly, Rule 34(b) no longer governed).

Based on the evidence provided by the parties and for the reasons set forth herein, the Court **DENIES AS MOOT** Defendant's request that Plaintiff reproduce the spreadsheets in native format, **GRANTS** Defendant's request for production of the emails with associated metadata in searchable format, and **REQUIRES** Plaintiff to pay for the cost of reproducing the emails with the associated metadata in searchable format. The Court finds that it is appropriate that Plaintiff pay for the reproduction because Plaintiff ignored Defendant's request to produce the documents in the native format with metadata, failed to meet and confer with Defendant as required by the Joint Discovery Plan, and then produced the documents in the unsearchable PDF format without metadata. Had Plaintiff met and conferred with Defendant as required by the Joint Discovery Plan, the parties could have resolved this issue or sought assistance from the Court prior to Plaintiff paying for the production of the emails as PDFs, and avoided the unnecessary expense of a second production. Because Plaintiff's actions are the reason a second production is necessary, Plaintiff must bear the cost of that production. Plaintiff must produce to Defendant by **June 9, 2015** the following data:

TBR00000001 through TBR00822493 as images with associated metadata indicating for each document the (1) custodian, (2) beginning and ending control number, (3) sender, (4) recipients, (5) carbon copy recipients, (6) subject/"re:" line, (7) date and time sent/received, (8) control numbers for any "parent" message or message attachments, and (9) searchable, extracted message text, with such images and metadata to be accompanied by (a) native Microsoft Excel versions of any Excel files attached to these email communications, with placeholder images or "sheets" within the image collection, identifying those attachments and their control numbers, and (b) a load file compatible with the "Summation" litigation review software.

**IT IS SO ORDERED.**

DATED: May 26, 2015

BARBARA L. MAJOR
United States Magistrate Judge